# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A SILVER TOYOTA TACOMA PICKUP WITH UTAH LICENSE PLATE 6AA728 REGISTERED TO JEFFREY NAKAOKA LOCATED AT 6361 W. MOUNT SHASTA CT, WEST VALLEY, UTAH, 84118 | **Filed Under Seal** <br><br> Case No.  2:23mj957 CMR |

I, **Christopher Snow**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Upon information and belief, a tracking device in or on a 2021 White Toyota Tacoma Pickup with Utah license plate 6AA728 registered to Jeffery NAKAOKA, and located at 6391 W. Mount Shasta Ct, West Valley City, Utah. 84118 (**SUBJECT VEHICLE**), is presently being used in furtherance of Title 18, United States Code, Section 1955 and Section 1956.

2. I further state that there is probable cause to believe that the installation of a tracking device in or on the **SUBJECT VEHICLE**, and use of the tracking device, will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

- Your Affiant, Special Agent Christopher Snow, is with Homeland Security Investigations (HSI), and have been employed in such capacity since 2004. Prior to that,

starting in 2001, your Affiant was with the United State Secret Service (USSS) as a Special Agent investigating US currency counterfeiting, identity theft and bank fraud. In 1995 your Affiant, graduated from the Utah Peace Officer Standards and Training (UPOST) and started as a police officer with the Murray, Utah Police Department. As a police officer/detective your Affiant was assigned to the Fraud and Forgery Unit that was responsible for investigating felony financial crimes in Murray, Utah under the authority of the Utah State Criminal Code.  Your Affiant is currently assigned to the HSI Salt Lake City, Utah office where your Affiant investigates violations of federal law, specifically customs and financial violations.  Your Affiant received a Bachelor of Science in from the University of Utah in 1997.  In 2001, your affiant graduated from six months of training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  At FLETC, your Affiant studied criminal law, financial crimes, customs law, drug identification, physical surveillance, Fourth Amendment searches, drafting search warrant affidavits and what constitutes probable cause.  During your Affiant's tenure as a criminal investigator, your Affiant has participated as case agent and support agent in numerous investigations covering various areas of criminal law. During these investigations, your Affiant has participated in interviewing witnesses and cooperating sources regarding various crimes, and your affiant has read official reports of similar interviews conducted by other officers. Your Affiant has participated in surveillance operations, observing, and recording movements of persons involved in criminal activity.  Your Affiant has been part of numerous financial crimes investigations and drug-related investigations. During those investigations your Affiant has observed and seized various types of illegal proceeds, including cryptocurrency, bulk cash, narcotics and weapons, interacted and spoken with defendants, participating witnesses and

informants who have personal knowledge of the transporting, laundering, and the concealing of proceeds of financial crimes and gambling. Your Affiant has investigated several types of financial cases from personal identity theft to larger currency trafficking organizations.  Your Affiant has authored search warrants, seizure warrants, tracking warrants, and other court orders in furtherance of criminal investigations.  As a federal agent, your Affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. This affidavit does not purport to set forth all of my knowledge of or investigation into this matter.

4. As set forth below, there is probable cause to believe that location data from the **SUBJECT VEHICLE** will lead to evidence, fruits, and instrumentalities of violations of 18 U.S.C § 1955, Prohibition of Illegal Gambling Business and 18 U.S.C § 1956, Laundering of Monetary Instruments.

## FACTS TO ESTABLISH PROBABLE CAUSE

5. In August 2023, Special Agents with Homeland Security Investigations (HSI), began investigating an illegal international sports betting and gambling operation based in Salt Lake City, Utah.

6. A Source of Information (SOI), who is credible and reliable, provided information that an online sports betting/gambling operation was operating in the Salt Lake City area under the name of Betsincity.com.

7. SOI stated he was approached by a friend who offered to set him up with a sports "bookie" that he was currently using.  The SOI provided HSI Special Agents with the

"welcome" text message he received from the "bookie" ((310)-425-4646), which stated an account had been created at Betsincity.com with a password and username.

8. Investigative database research revealed that Jeffery NAKAOKA was the registered owner of cell phone (310)-425-4646.

9. Further investigation research revealed an online cash application (Apps) Venmo in the name of Jeffrey NAKAOKA as @jeffrey-nakaoka. Venmo is a peer-to-peer payment application available on iPhones and Android cell phones that allow for quick and easy exchange of money directly between individuals. A review of the public Venmo feed of @jeffrey-nakaoka shows multiple transactions with sports references as well as references to Betsincity accounts.

10. The "welcome" text, to the SOI, also detailed that all payments for wager placed (win or loss) were expected on Monday of each week and the preferred method of payment would be utilizing various cash applications (Apps).

11. The SOI placed wagers on NCAA college basketball games. The following week the SOI contacted the "bookies" phone number (310-425-4646) to inquire how to settle the account. The SOI was sent a text message, from the same number, to make payment via Venmo to the Venmo account of @jeffrey-nakaoka. The SOI was asked to keep the transfers under $300 because Venmo limits transfer amounts to $300.00 when the accounts sending or receiving have not been "verified".

12. In September 2023, the SOI was again contacted by NAKAOKA regarding settling of wages that had been placed. NAKAOKA indicated he would send "his guy Bobby G" to collect the money owed from the lost wagers. NAKAOKA provided the phone number of "Bobby G" as (801) 589-2204.

13. An Investigative database research revealed that Robert GARCIA was the registered owner of cell phone (801) 859-2204.

14. Further investigation research revealed an online cash application (CashApp) in the phone number (801) 859-2204 belonged to Robert GARCIA.

15. In September, 2023 the SOI met with "Bobby G" in Salt Lake City, to make payments on lost wagers. HSI SLC Special Agents observed a Silver Ford Fusion, Utah license plate E458DC, arrive to meet with the SOI. The driver of the vehicle identified himself to the SOI as "Bobby G" and provided his Venmo account for future transactions as @Bobby-G-88.

16. Records checks revealed the Silver Ford Fusion, Utah plate E458DC, is registered to Juanita GARCIA at 1240 N. Buccaneer Dr, SLC, UT. 84116.

17. Further investigation research revealed the phone number (801) 859-2204 was listed on the Utah Driver License of Robert Lucero GARCIA. The address listed on the Utah Driver's License #166829439 is 1240 N. Buccaneer Dr, SLC, UT. 84116.

18. A review of Venmo for @Bobby-G-88 shows only 1 person utilizing that "handle." No other business or charities could be located that utilized @Bobby-G-88.

19. During September of 2023, the SOI was contacted by a phone number purporting to be NAKAOKA at phone (801) 414-4928. The SOI was asked to meet to settle up on bets that had been lost.

20. HSI Special Agents observed the meeting with the SOI as a Silver 2021 Toyota Tacoma pickup truck, Utah plate 6AA728, arrived to collect the money owed and spoke with the SOI. The subject driving the vehicle identified himself as Jeffrey NAKAOKA. The subject

driver indicated he had been working in this business "for a while" but was working with a new group out of Costa Rica and they were better to work with.

21. A database search shows NAKAOKA is the owner of the of the vehicle: 2021 Silver Toyota Tacoma Pickup with Utah license plate 6AA728. HSI Special Agents have conducted surveillance on multiple occasions and have observed NAKAOKA's vehicle at his home and place of employment between July 2023 and September 2023 .

22. Further investigation research revealed a Utah Driver License, #153119859, in the name of Jeffrey NAKAOKA. The address listed on the Utah Driver's License is 6361 W. Mount Shasta Ct. West Valley, UT. 84118.

23. Based on training and experience in narcotics investigations, and observations in this investigation, Agents believe that NAKAOKA utilizes the **SUBJECT VEHICLE** to facilitate the delivery/pickup of gambling wagers/proceeds to customers in the Salt Lake Metro area. Agents believe that NAKAOKA will continue to use this vehicles to further his gambling efforts; GPS location data on this vehicle will assist agents in identifying NAKAOKA's financial proceeds, banking/financial institutions, co-conspirators and/or end users participating in the illegal gambling operation.

24. In order to track the movement of the **SUBJECT VEHICLE** effectively and to decrease the chance of detection, I seek authorization to place a tracking device in or on the **SUBJECT VEHICLE** while it is in the District of Utah.  Because of the possibility the **SUBJECT VEHICLE** may park on private property, it may be necessary to enter onto private property in order to effect the installation, repair, replacement, and removal of the tracking device.

25. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours. I have observed other residents of the neighborhood walking in close proximity to the above-listed residence during daytime hours. I have observed that pedestrian traffic appears to be considerably less during the later evening hours. I feel that it would be safer for children who may live in the area as well as the other residents of the neighborhood if the warrant were to be served in the evening/night hours, during a time when the pedestrian traffic around the neighborhood appears to be less frequent.

26. I know from experience and training, and as detailed in this affidavit, that those persons involved in online illegal gambling operations will go to great lengths to conceal, hinder, or thwart law enforcement discovery of their operations or locations associated with the financial transactions of the gambling operation. As articulated in this affidavit, I believe the placement of a GPS tracking device on the **SUBJECT VEHICLE** will lead to evidentiary information related to the location and identification of persons, financial transactions and illegally gained U.S. currency.

27. In my experience, those directing online illegal gambling operations frequently use their vehicles to transport, pick up or drop off proceeds, travel between locations where currency or proceeds are stored, travel to meeting locations with customers, and travel to meeting locations with other parties in furtherance of the illegal gambling and distribution of proceeds.

28. In the event that the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-

five (45) days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

29. It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents, Federally Deputized State and Local Law Enforcement Officers, and other government and contract personnel acting under the supervision of such investigative or Law Enforcement Officers, as necessary to effectuate the warrant.

30. In accordance with 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I request that the warrant delay notification of the execution of the warrant for a period not to exceed 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the ongoing investigation. Pre-mature discovery of the investigation would likely lead the conspirators to flee and destroy evidence.

31. WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of Homeland Security Investigations or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the **SUBJECT VEHICLE** within the District of Utah within 10 calendar days of the issuance of the requested warrant, and to remove said tracking device from the **SUBJECT VEHICLE** after the use of the tracking device has ended;

to surreptitiously enter the property at 6361 W. Mount Shasta Ct, West Valley, Utah, 84118 for installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device, for a period of forty five (45) days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Utah.

RESPECTFULLY SUBMITTED this __18th__ day of October, 2023.

*Christopher Snow*
Christopher Snow, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __18th__ day of October, 2023.

*Cecilia M. Romero*
_____
CECILIA M. ROMERO
United States Magistrate Judge